Case number 11-2555, Gloria Reyes v. Menards, Inc. May I please report, counsel? My name is Elizabeth Ryan, and I represent the plaintiff, the appellant in this matter, Gloria Reyes. This action seeks redress. Let me ask you this right off the bat. Are you the young lady who handled the arbitration? No, I was not. Okay. I noticed that the judge, in denying the motion to reconsider, was of the opinion that your law firm or this young lady did not want to seek leave of court. Not that she forgot to do that, but she didn't want to do it. Is that right? You know, I reviewed the transcript. She's no longer with our firm. I reviewed the transcript. I wonder why. Because when we are determining whether somebody acted in good faith in arbitration, if somebody arrogantly says, I'm not going to do it, that arrogance would end up to be bad faith. Your Honor, based on the transcript of the proceedings, it is my understanding, based on that, that the attorney misunderstood what she was supposed to do. Was she an inexperienced lawyer? No, she is not. I think... I mean, had she handled these type of cases before? Yes, she's handled many arbitrations. It was her understanding that she had complied with the discovery request, and that because of that, there was no need then to enter a motion. She didn't know she was a week late? She understood that, but because she did submit the written discovery 60 days prior to the arbitration, she felt that she had complied. But the issue... How do you comply when you get a date and you file it late? Don't you have to go to court to get leave to file it? I mean, isn't that what we do? Your Honor, the issue, though, before you today is whether or not the trial court was unduly harsh in not allowing the plaintiff from rejecting the arbitration award. I agree with that issue, but the point I want to bring out is that you understand that people have to comply with court orders. They can't just ignore them. Yes, and we can see that she did make an error by not entering a motion to vacate. Okay, I think you've answered my question. Yes. Let me ask you, the discovery that was tendered late also involved her deposition? No, the deposition was timely, yes. The only thing was the initial thing that she was supposed to file. She filed one, I think, was it a week late? It was seven days late. Everything else she did in a timely fashion. Yes, she did. Everything else was done in a timely fashion. And going back to Justice Gordon's point, it was not done in bad faith. But let me ask you this regarding your position is that as far as the rules for an arbitration hearing are concerned, those were fully Yes. And that included the, what material was that? Okay, so that included the answers to interrogatories and the requests for production. And the answers to interrogatories were the same ones that were filed late? Yes. It is our position, and based on the order that was entered by the arbitration panel, that at the time of arbitration, the plaintiff in no way acted in bad faith. The actual order itself reflects that the plaintiff did participate in good faith at the arbitration. But they entered a bar because they were basically enforcing the circuit court's order? Yes. Yes. And the question is whether that order was subject to being enforced in the course of an arbitration hearing? Well, the actual issue is then whether or not because of that, because they were unable to testify at the arbitration, if then they should take it a step further and be barred from rejecting the arbitration award. Is there any authority that gives the arbitration panel the right to bar a party who wants to testify, who's there to testify, who's represented by counsel, and told, no, we're not going to let you demonstrate your good faith based on an order previously entered by the circuit court? Is the panel some sort of administrator for the circuit court? Or aren't they there simply to do what they're obligated to do, which is hear a case? Right. Yes. And so long as the parties participate, they have no other role to play. No, there's a manual by the arbitrators, and in the manual it says they have to comply with the court orders. And if there's a barring, they're not to allow the testimony. And doesn't that, then we do have to at some point address that court order that was entered. And my problem with that order is that it shifts or it places the burden, it almost prejudges on part of the circuit court. It's a self-executing order? But self-executing orders aren't, as far as I know, aren't approved. I mean, there's no authority that says self-executing orders are good, because what it says, you're going to do what I say you're going to do, and if you don't do it, I'm going to strike your testimony. No matter what. No matter what. No matter what.  Where is the exercise of discretion? Because when we have situations like that, we say you're going to file your brief on this date, or your position may be subject to dismissal. We don't dismiss it out of hand. We let the parties come in and say, you know, they still didn't comply, we're asking you now to bar their testimony. Yes, and we would agree with that. This case specifically, there's a seven-day delay in filing interrogatory. Is there any suggestion that even if it had been one day, the consequences would have been the same? An hour? Right. And the defendant in no way was prejudiced at time of arbitration. They had all the materials 60 days prior. As stated before, a plaintiff was present for a deposition. And I think that's the significance here, is whether or not a party, at the time of arbitration, is prejudiced by another party's failure to comply with the specific terms of the barring order. And that manual that Justice Gordon was referring to, if it says, you know, a person must present himself for a deposition, and come the arbitration date, and the person doesn't appear, I mean, that's a different kind of order. Yes. Where action was required, action wasn't taken, and therefore, you know, the arbitration panel can enforce that order. Right. But it is a different situation when compliance was done, it was just done in a little late. Yes. And that is our position here today. In this court, in Walker v. Lewis, this court reversed the trial court's decision to bar the defendant from rejecting an arbitration award when the defendant did not appear for arbitration. They found that the plaintiff, this court found that the plaintiff was not prejudiced in any way. And that was when a defendant did not appear for an arbitration. So our argument today is that defendant in no way, shape, or form was prejudiced because of our seven-day delay. The purpose and scope of 91B, and the committee notes reflect this, is to maintain the integrity of the arbitration process. And there was problems with litigants appearing at these arbitrations, not actively participating, using it merely as a hurdle to get the case to trial. That is not the case here. The plaintiff in no way was trying to circumvent the system. They acted in good faith both prior to the hearing and at the hearing, as reflected by the order. And it is our position that the trial court's determination to bar the plaintiff from rejecting the arbitration award goes against the spirit and the purpose of 91B, and is also unduly harsh. So that is the basis of our argument. The appellee refers to and relies upon various first district cases. Campesano is one, and that was a case where the defendant failed to answer written discovery altogether, and only appeared at one of the two depositions. In this case, as stated before, the plaintiff answered discovery 60 days prior to the arbitration, was present for the arbitration with a translator and attorney, and also appeared for deposition. Again, another case relied upon by the appellee in this case is Williams v. Dorsey, which was a 95 case. The defendant did not appear at arbitration, despite the plaintiff's 237 notice. And this court noted that the policy upheld by Illinois courts is in favor of resolution of cases on the merits. And that is what we are asking you today, that you ensure that this case be heard on the merits and not be dismissed based on a mere technicality. I have nothing further. Thank you. Thank you. If it may please the court, Martha Heiberger on behalf of the defendant Menarding. I'm sorry, young lady, I did hear you. Louder? Okay. Martha Heiberger on behalf of the defendant Menarding. And if I may, I'd first like to address your Honor's request for any sort of case law that states that you're allowed to have a self-executing order. Well, I named them all in my briefs. Holman, Anderson, Caprizzano. And I will admit, it's less clear in Lopez that it was a self-executing order, but it was a prior order. It doesn't necessarily say it was self-executing. So in all of those cases, it was a self-executing order that stated that if you do not comply with the specific terms of this order, that you will be barred from presenting evidence and testimony at the arbitration and the trial, just like the one in this case. In fact, in the municipal division, that's the practice, self-executing orders. It's not only the practice, but it has been the practice. And since I started practicing law, which is probably longer than I look, it was the practice. That order has been in effect. It was followed by Judges Johnson, Judges Dunford, Snyder, all of the judges that I have had in there, all the way back to Judge Michael T. Healy, who actually, I believe, wrote the order. That's what they have always had in there. That is the practice. The counsel that was for the plaintiff that was involved in this was reminded of that by the judge at the hearing, that not only has this been the practice, but she has participated in this practice before his honor on numerous occasions. That is why he asked her the question, did you make this decision or was it a mistake? And she flat out stated, it was not a mistake. I affirmatively decided not to vacate the court order before I went to the arbitration. We then proceeded to the arbitration before the arbitration. Did she explain herself? I mean, why she decided that way? She didn't feel she needed to. That was her only statement. Because she was only late a week. And the judge said, well, why did you feel you didn't need to? And she said, well, because she's not prejudiced. And he said, but it's my court order and it's her responsibility to bring the court order to the arbitrators and it is the arbitrators' responsibility to follow that order. As part of her motion for rejection, did she ask for leave to file it at that point? I apologize, Your Honor, I'm not certain. At the time that the plaintiff here made a motion to reject the arbitration, did she also make a motion for leave to file the interrogatory? As a non-protonc motion. No, she did not do a non-protonc motion or even a retroactive motion. At that point in time, what she requested was just to vacate the award. That was her only request at that point in time. She did not request for retroactive leave or to in any way resolve the issue other than to vacate the award and move forward. In fact, she told me before the arbitration that, oh, well, this happened before I just rejected the arbitration. So I was a little concerned at the fact that it could be a strategy. I mean, if we ignore the court's order and we go in and we say, all right, well, we'll either go ahead if we're allowed to, but if the order is addressed and it is complied with and enforced by the arbitration panel, then we don't have to go through this arbitration process. We don't have to deal with an award. We'll just vacate the award and reject it and move on to trial. I'm sorry, I didn't mean to interrupt you. To me, it just seems so harsh for the plaintiff, who didn't do anything wrong, but the plaintiff's lawyer, that this kind of result should inure to the plaintiff's detriment rather than just punishing the lawyer who had this defiant attitude. Unfortunately, Your Honor, I apologize if I interrupted. But unfortunately, that's not in the judge's purview to say we're going to- Well, the judge can certainly sanction the lawyer for doing it and vacate the order saying that they were going to fire them. Well, then if he's willing to vacate the order, then I would say that the abuse of discretion would have been if he had made the opposite decision and said, in this case, because I feel sorry for the plaintiff, I'm not going to follow my order. That would have been an arbitrary decision. What kind of discretion is he exercising at the time that he entered the order saying, comply with my order or the hammer will come down without any more involvement by this court? What kind of discretion is that? It doesn't seem like there's any. Well, it doesn't seem like there's discretion. I suppose that there is discretion in being willing to use that order. But that, as I said, goes back many, many- Did he say that- I've noticed in this case that the defendant has had to come in here on two, three, four different motions to compel. And given the unwillingness of the plaintiff to comply with prior discovery orders, I'm going to make it very clear that the consequence will be severe if she doesn't comply with this order. Now, that, I can say, involves discretion. Well, that's not exactly what happened. That's not. We had been before the court a number of times. We had presented a number of Supreme Court Rule 201-K letters. And so we came before the court and asked for the motion to compel to be granted. And, in fact, the judge said, I am going to grant it. That's the situation in every motion to compel. Right. And he asked the plaintiff specifically, how much time do you need? They got to fill in those blanks. They got to say, this is how much time I need, this is how much time I need. And he reminded them, he always does, you know, he specifically says, counsel, use the self-executing barring order. Right. And that's the thing that, I guess, really sort of rubs me the wrong way. And the fact that we've been using these self-executing orders from time immemorial doesn't make them right. And, in fact, there's a well-known saying that just because we've been doing this way doesn't mean we have to continue doing this way in the future. And I don't know if Justice Lampkin can recall, but there was a situation regarding probation matters at 26th Street, where all the judges would follow the same probation procedure. If you don't do this, we're going to give you a year. And yet the Supreme Court eventually came down and said, stop, you can't do it. And I understand that, but I would go to the precedent, which says in Coleman it was upheld, in Anderson it was upheld, in Camposano it was upheld. And the only case that they were able to show that it was not upheld was one where the judge had said that they put in the sanction order before the arbitration had ever proceeded. And they said, well, that was because the defendant didn't even show up, they allowed it. Well, the defendant did show up by telephone pursuant to a court order. That is the only case that they can come up with. So I would lean to the precedent that it's not only something that's been in practice, but it's something that has been affirmed by the appellate court on a number of occasions. All right. Any other questions? No. Thank you for your time. Thank you. A couple of minutes if you need them. Hello, sir. How are you? I'm just fine. And how are you, sir? Please do me well. How old do you think you are? I don't know. You look pretty well. Can you do me? Thank you. I was going to say, please do me that little bit. Let her finish first. Okay. Again, I'd just like to bring back the court to the issue that is before the court, which is whether or not the trial court abused its discretion when it barred the plaintiff from rejecting the arbitration order. We concede that the plaintiff in this case should have entered a motion to vacate, and actually she did on May after the arbitration date. She did enter a motion to vacate that order. Would you agree that the lawyer in your office who handled this case would be subject to discovery sanctions for what she did? Would you agree to that? We're not disputing the fact that because it was seven days late, on the date of the arbitration the plaintiff was barred from testifying. We're not disputing that sanction isn't right. What we're disputing is now that the judge had ruled we can no longer reject the arbitration order. Now, that's two penalties for one, noncompliance, and we feel that's unduly harsh, and it goes against the scope and the purpose of Supreme Court Rule 91B. So that's our argument. Again, You see, here's where the problem comes in. The problem comes in that you were barred at the arbitration proceeding. Okay, so now you get to avoid that when no one else gets to avoid it, and this lawyer gets away with murder. I think that certainly she would be subject to discovery sanctions by the trial court, would have the right to do that. And I think she acknowledged That type of conduct, you see, is irresponsible and not acceptable. And I think she did acknowledge that, and if you review the transcript in the hearing, she did acknowledge that. I guess I didn't see that, but even if you acknowledge it, you're still subject to the sanction. Lawyers can't flout the orders of the court, whether they're good, bad, or indifferent. They can appeal them, but they can't flout the orders of the court. And I don't think that was her intention. I don't think she was acting in bad faith in any way. I think she made a good faith effort to comply with that order, and she did submit those interrogatories. Well, a good faith effort would have been to vacate when she filed the interrogatories. It's laziness or it's lack of knowledge. I don't know what it is. And if you review the transcript, it looks as though she believed that she did comply with the order because she did tender the discovery 60 days prior to the arbitration date. So it was her understanding that she did not have to go in for a motion to vacate because she had complied. Kind of a mistake of law, you're saying. So she thought it was either-or, either you do it by this date or you do it within 60 days. And the cases that Epley relies upon, the language of this court specifically states, if you look at Anderson, in that case the defendant submitted unsigned answers to interrogatories and did not produce any documents. Because you're over your time. But we are familiar with the cases that she cited, and I think we're going to stop now. Okay, thank you. And, again, thank you, everyone. We are going to take the case under advisement.